# United States District Court

_____ SOUTHERN _____ DISTRICT OF _____ FLORIDA _____

UNITED STATES OF AMERICA

V.

COLLEEN E. MEDINA
NICHOLAS D. DIAZ
JOHNNY HURTADO

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: $00-4154-$
S'NOW

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about June 24, 2000, in ___ Broward and Palm Beach ___ counties, in the ___ Southern ___ District of ___ Florida ___ defendant(s) did, (Track Statutory Language of Offense)

knowingly and intentionally possess with intent to distribute a controlled substance, that is, a mixture and substance containing a detectable amount of cocaine; and conspire to possess with intent to distribute a controlled substance, that is, a mixture and substance containing a detectable amount of cocaine,

in violation of Title __21__ United States Code, Section(s) __841(a)(1) and 846__

I further state that I am a(n) ___Special Agent___ and that this complaint is based on the following facts:
<sub>Official Title</sub>

Please see attached affidavit.

Continued on the attached and made a part hereof: [x] Yes [ ] No

Signature of Complainant
Robert Shinn, Special Agent
Drug Enforcement Administration

Sworn to before me, and subscribed in my presence,

June 26, 2000                                                    at   Ft. Lauderdale, Florida
_____                                 _____
Date                                                                  City and State

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE                                      Lurana S. Snow
Name and Title of Judicial Officer                                  Signature of Judicial Officer



AFFIDAVIT

Before me, the undersigned personally appeared Robert Shinn, who being duly sworn, deposes and states:

1. I am employed as a Special Agent with the Drug Enforcement Administration (DEA) in Fort Lauderdale, Florida. I have been a Special Agent for approximately three and one half years and am currently assigned to investigate violations of federal narcotics laws. Prior to my employment with the DEA, I was a Police Officer in St. Louis County Missouri for eight years. During my last two years in St. Louis County I was assigned to a narcotics unit where I conducted narcotics investigations.

2. During my career as a DEA Agent and as a police officer, I have participated in numerous investigations involving violations of narcotics laws, including numerous cocaine cases. As a result of my experience, I am familiar with the manner and methods used by narcotics traffickers to distribute narcotics.

3. This affidavit is submitted as part of a complaint for COLLEEN ELIZABETH MEDINA, NICHOLAS D. DIAZ, AND JOHNNY HURTADO to show probable cause for the federal violations of possession with intent to distribute cocaine, in violation of Title 21 United States Code, Section 841 (a)(1), and conspiracy to possess cocaine with intent to distribute, in violation of Title 21, United States Code, Section 846.

4. On June 23, 2000, I received information provided by a Confidential Source (CS) regarding the suspicious travel itinerary of Colleen E. MEDINA. The CS further stated that MEDINA was to depart John Wayne Airport located in Orange County, California on June 23, 2000, aboard America West Airlines flight 660 en route to Las Vegas, Nevada. According to the CS, MEDINA was going to stay in Las Vegas for a few hours and depart on America West Airlines flight 880 en route to Fort Lauderdale, Florida and may be in possession of (2) kilograms of cocaine. Flight 880 was scheduled to arrive at the Fort Lauderdale/Hollywood International Airport on June 24, 2000 at approximately 6:50 a.m.

5. On June 24, 2000 S/A Douglas Mc Elwain and I, along with members of the Broward County Domestic Interdiction Unit (DIU) responded to the Fort Lauderdale/Hollywood International Airport and conducted a surveillance in the terminal area. After checking with representatives from America West Airlines, it was determined that flight 880 was delayed and would arrive at approximately 7:35 a.m.

6. Upon arrival of America West Airline flight 880 to the Fort Lauderdale/Hollywood International Airport, Detective Eddie Grant and his K-9 partner "Dusty" were positioned at the entrance to the jetway. As passengers deplaned and exited the jetway, they walked past Detective Grant and K-9 Dusty, at which time K-9 Dusty alerted to

the presence of a narcotic odor emanating from MEDINA's carry-on bag. At that time, DIU detective Eric Pulskamp and I approached MEDINA, at which time I identified myself as a Special Agent with the Drug Enforcement Administration by displaying my credentials and photo identification. I asked MEDINA if I could speak with her and she agreed. I explained my duties as an interdiction agent and requested to see her airline ticket. MEDINA handed me her ticket which identified her as Colleen MEDINA. I returned her airline ticket and asked if she had any drug contraband or large sums of currency in her possession, and she replied "no". I observed her to become increasingly nervous and asked if she would allow me to search her carry-on bag, which she agreed.

7. Upon examination of MEDINA's carry-on bag, I observed (4) rectangular shaped packages wrapped in pink cellophane co-mingled in clothing. I placed MEDINA under arrest and escorted her to the DIU office for further investigation. Upon arrival to the DIU office, BSO deputy Nora Halabi conducted a pat-down search of MEDINA, who was sweating profusely. While at the DIU office, Detective Pulskamp removed the (4) rectangular shaped packages from MEDINA's carry-on bag and placed them on a weight scale, which revealed a gross weight of 5.8 pounds. Detective Tim Hill conducted a field test of the (4) packages, which resulted in a positive indication for cocaine, a Schedule II controlled substance.

8. I read MEDINA her Constitutional Rights per Miranda and received acknowledgment from MEDINA that she understood her rights and agreed to waive same. MEDINA then admitted that she was a courier for the transportation of cocaine for cocaine distribution organization based in Orange County, California. MEDINA admitted that she was being paid to act as a courier, and further admitted to several prior trips as a cocaine/money courier to Atlanta, Georgia, Sanford, North Carolina, and Fort Lauderdale, Florida.

9. MEDINA further stated that upon arrival to Fort Lauderdale, Florida, she was to secure a room at a hotel in West Palm Beach, Florida and call her own pager number and leave a voice message regarding the hotel location and room number. A subject known to her as "Jackie", in Orange County, California, would retrieve the message. Jackie LNU would then make arrangements to contact a another subject known as "Huero" in Palm Beach County, Florida. According to MEDINA, Huero was responsible to send other couriers to her location to pick up the cocaine.

10. MEDINA agreed to cooperate with law enforcement and participate in a controlled delivery, at which time DEA Agents from the Fort Lauderdale District Office and DIU detectives established a surveillance at a Comfort Inn Hotel in West Palm Beach, Florida. On June 24, 2000, at approximately 2:30 p.m. MEDINA placed a call to her pager and left a voice message that everything was okay and gave the location of the hotel and her room number. At approximately 3:00 p.m. Jackie telephone MEDINA at her hotel room. Jackie called two additional times, then stated to MEDINA that people were on their way to see her.

11. At approximately 7:30 p.m., two subjects later identified as Nicholas D. DIAZ and Johnny HURTADO knocked on the door to MEDINA's hotel room. MEDINA let DIAZ and HURTADO inside at which time both DIAZ and HURTADO place (2) packages of "sham" inside their pants and left the room, at which time they were arrested without incident.

12. Detective Jose Interian read DIAZ and HURTADO their Constitutional Rights per Miranda in Spanish, at which time they acknowledged that they understood their rights and agreed to waive same. DIAZ and HURTADO advised detective Interian that they met "Huero" earlier in the day, at which time Huero provided them with his vehicle and a payment of $3,000.00 to pick up the cocaine from MEDINA at her hotel room. Once they possessed the cocaine, they were instructed by Huero to drive his vehicle to a gas station and leave the cocaine and car keys inside the vehicle.

FURTHER YOUR AFFIANT SAITH NOT.

ROBERT SHINN, Special Agent
DEA

Subscribed and sworn to
Before me this 26th day of June, 2000.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE